IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILLIAM GRIGGS                                                       PLAINTIFF

v.                                                                    No. 1:16CV71-GHD-JMV

MARSHALL FISHER, ET AL.                                DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Williams Griggs, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants failed to protect him from attack by other inmates. The defendants have moved for summary judgment; the plaintiff has responded, and the matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the

nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation,* 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record,* [the ultimate decision becomes] purely a question of law." *Scott v. Harris,* 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## Undisputed Material Facts

Williams Griggs is an inmate in the custody of the Mississippi Department of Corrections ("MDOC"). In his complaint [1], he alleges that he was attacked by gang members on March 7, 2016, while housed at the East Mississippi Correctional Facility (EMCF) in Meridian, Mississippi. He has named as defendants Marshall Fisher, former Commissioner of MDOC, Ron King, Superintendent of Central Mississippi Correctional Facility (CMCF) in Pearl, Mississippi, and James Fillyaw, Deputy Warden of CMCF in Pearl, Mississippi. None of these defendants worked at the East Mississippi Correctional Facility, where the attack occurred.

Mr. Griggs alleges that while housed at CMCF in Pearl, Mississippi, in September of 2015, he asked these three defendants to place him in protective custody, but they did not do so. He alleges that he wrote Commissioner Fisher somewhere between September 1 and September 3, 2015, requesting protective custody because gang members had placed a "KOS" ("Kill on Sight") order against him. [1 at 6]. Griggs alleges that, prior to sending his request to the Commissioner, he "sent out many hand-mails to Warden Fillyaw." [1 at 6]. He alleges that on September 8, 2015, he received a response to his letter to Commissioner Fisher from CMCF Superintendent Ron King, which read as follows:

> Your recent correspondence to the Commissioner's office has been forwarded to the case manager and Deputy Warden at CMCF R.C. In the future, please follow the proper chain of command at the facility level for matters such as this.

[1 at 6].

Griggs was transferred from CMCF to South Mississippi Correctional Institution (SMCI) in Leakesville, Mississippi on October 21, 2015, then to East Mississippi Correctional Facility in

Meridian, Mississippi on December 21, 2015. He alleges that the attack occurred several months later on March 7, 2016, while housed at EMCF. According to the Mississippi Department of Corrections website, Mr. Griggs was most recently moved to the Central Mississippi Correctional Facility on July 28, 2017, where he remains.

## Failure to Protect

Williams Griggs claims that the defendants failed to protect him from attack by other inmates. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre*, 710 F.2d 1120 (5th Cir. 1983)

-5-

(sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

### Failure to State a Claim Against the Named Defendants

Mr. Griggs alleges that he was attacked while housed at the *East* Mississippi Correctional Facility (in Meridian, Mississippi); however, none of the defendants worked at that facility when Griggs was attacked. Instead, defendants King and Fillyaw worked at the *Central* Mississippi Correctional Facility (in Pearl, Mississippi), while Commissioner Fisher's office was in Jackson. For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). As none of the defendants were present at the Meridian, Mississippi, facility during the attack, they could not have been personally involved in the incident. Indeed, the attack took place nearly five months after Mr. Griggs had left CMCF (where King and Fillyaw worked).

In addition, prison officials can fulfill their duties under the Eighth Amendment by referring a matter to others for investigation or taking other administrative action. *Longoria v. State of Tex. et al.*, 473 F.3d 586 (5th Cir. 2006) (citing *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir.2004)). That is what happened in the present case as to Commissioner Fisher, as discussed below.

Mr. Griggs also alleges that he wrote Deputy Warden Fillyaw several "handmails" regarding his request for protective custody, but received no relief. [1 at 6]. Even if Mr. Fillyaw received the requests and failed or refused to grant them, Mr. Griggs has provided no evidence that Fillyaw had actual knowledge of a substantial risk of serious harm to Griggs, but disregarded it. Indeed, Griggs never filed a prison grievance during his stay at CMCF requesting to be placed in protective custody. This failure is remarkable because he alleges that while he was there: (1) gang members had issued an order to kill him on sight; (2) gang members tried to attack him nearly every day; and (3) prison officials did nothing to help him. [1]. However, Mr. Griggs did not seek protective custody through the grievance process until *after* the attack of March 7, 2016, at EMCF in Meridian. [27]. MDOC Case Managers keep an Offender Log detailing events during an inmate's stay. [30-3]. During Griggs' stay at CMCF (August 4, 2015, to October 20, 2015), he never mentioned a "Kill on Sight" order or that he might be in danger. *Id.* Certainly, Mr. Griggs knew how to request safer housing, as he did so immediately upon arriving at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, on October 21, 2015. [30-3 at 6]. He told his case manager that he recognized several inmates who wanted to stab him – and described in detail the why they held a grudge against him. *Id.* He asked to be housed away from those inmates, and he was not housed with them. *Id.* Mr. Griggs did not file a grievance regarding placement on protective custody during his stay at CMCF, where defendant Fillyaw worked. In addition the attack occurred nearly five months later, in an institution many miles away from Fillyaw. For these reasons, Mr. Griggs' allegations against defendant Fillyaw for failure to protect him will be dismissed for failure to state a claim upon which relief could be granted.

*Supervisor Liability*

Mr. Griggs' allegations against Commissioner Fisher and Superintendent King arise solely out of their positions as supervisors. He wrote Commissioner Fisher, who referred the matter to Superintendent King, who, in turn, referred the matter to Griggs' case manager and Deputy Warden Fillyaw at CMCF R.C. [1 at 6]. According to Mr. Griggs, no one took action to place him on protective custody, but he was not attacked during his stay at CMCF.

A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, Mr. Griggs does not allege that defendants Marshall Fisher and Ron King had any personal involvement or were in any way causally connected to the incident. Each, as a supervisor, passed the matter down the chain of command to someone closer to the situation. He was later

transferred out of CMCF without incident. As such, this action will be dismissed as to defendants Fisher and King for failure to state a constitutional question.

## Conclusion

In sum, for the reasons set forth above, the motion by the defendants for summary judgment will be granted, as none of the plaintiff's allegations state a constitutional claim. The defendants were not present during the attack in question; they were working in other locations far from EMCF. Marshall Fisher and Ron King fulfilled their duty to ensure Mr. Griggs' safety by referring the matter to someone closer in the chain of command. None of the defendants had any personal involvement in the incident. As such, judgment will be entered for the defendants in all respects.

**SO ORDERED**, this, the 25th day of August, 2017.

/s/ Jle H. Danelson
SENIOR JUDGE